UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stephen A. Eley                                            Civil No. 03-6555 (JRT/FLN)

    Plaintiff,

v.                                                                  **REPORT AND RECOMMENDATION**

U.S. Department of Veterans Affairs,

    Defendant

_____

Stephen A. Eley, Pro Se Plaintiff.
Lonnie F. Bryan, Assistant United States Attorney, for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on July 22, 2005, on Defendant's Motion for Summary Judgment [#25]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, the Court recommends Defendant's Motion be granted.

## I. BACKGROUND

### A.     The Harassment Claim

Plaintiff Stephen A. Eley brings this employment discrimination suit, claiming that the Veterans Administration Medical Center ("VAMC") retaliated against him when they terminated his employment in 2002. The events that gave rise to Plaintiff's claim began in 2001, while he was employed as a janitor in the radiology department at the VAMC. (See Def. Ex. 1 at 897). In June 2001, Plaintiff initiated a friendship with Kathryn Schoonover, a medical clerk in the radiology department. (Id.). In the months that followed, Plaintiff brought Schoonover gifts of food and made other advances toward her. Schoonover never accepted the gifts. (Id.).

-1-

In December 2001, Schoonover reported Plaintiff's behavior to her supervisor, Marlys Hughes, and told her she planned to confront Plaintiff and to tell him to leave her alone. (Id. at 899). When Schoonover approached Plaintiff, he seemed receptive to her request to leave her alone and said he respected the request.

A couple of months later, however, Plaintiff began bringing Schoonover food and candy again. (Id. at 900). He also approached Schoonover to ask her out on a date. This type of behavior continued intermittently until May 15, 2002, when Schoonover reported the behavior to her new supervisor, Jane Keel, who contacted Plaintiff's supervisor, Lucious Kearse. (Id. at 901). Two days later, a meeting took place between Schoonover, Kearse and Mary Shaw, the head of the radiology department. (Id.). At the conclusion of the meeting, Kearse told Schoonover that he would meet with Plaintiff that evening. (Id.). The next day, Plaintiff apologized to Schoonover and told her he would leave her alone. (Id. at 902).

Despite his reassurance, about a month later, Plaintiff followed Schoonover as she left work. (Id.). Ms. Schoonover noticed Plaintiff following her and decided to drive to a nearby movie rental store to phone the police. (Id. at 903). Plaintiff followed her into the store and approached her before she had an opportunity to contact the police. (Id.). Ms. Schoonover asked Plaintiff to leave the store and leave her alone. (Id.).

After waiting for Plaintiff to leave, Ms. Schoonover returned home and contacted the police to seek a restraining order against Plaintiff. (Id.). Plaintiff later admitted following Schoonover that day. (Id. at 1680). The Hennepin County District Court issued a Temporary Restraining Order against Plaintiff on June 27, 2002. (Id. at 741-45). After a hearing, the court issued a Restraining Order against Plaintiff on September 11, 2002. (Id. at 746; 323).

On June 21, 2002, Schoonover reported to Plaintiff's supervisor, Lou Kearse, that Plaintiff had followed her as she left work. (Id. at 816). Later that day, Plaintiff asked to be transferred out of the radiology department. (Id. at 817; 1681).

### B.      Investigation of the Harassment Claim and Plaintiff's Claim of Retaliation

On June 25, 2002, Schoonover asked Petra Hartness, the VAMC Equal Employment Opportunity ("EEO") Manager, to start an investigation into Plaintiff's harassing behavior. (Id. at 321). On that day, Kearse informed Plaintiff that he was being reassigned to a different department. (Id. at 818). On June 28, 2002, Kearse presented Plaintiff with written notice of his reassignment, (a "written letter of counseling") which notified him that he was not allowed to enter the radiology department until the investigation regarding Schoonover's allegations had concluded. (Id. at 815).

On June 27, 2002, Plaintiff contacted the Office of Resolution Management ("ORM"), an autonomous office within the Veteran's Administration that processes employee discrimination claims. (Id. at 53). He claimed that Kearse's reassignment of him constituted harassment, and that Kearse reassigned him in retaliation for his prior ORM activity. (Id. at 56).

On July 15, 2002, Hartness interviewed Plaintiff as part of the VAMC's informal investigation of Schoonover's claim of harassment. (Id. at 642; 647). Based on the information gathered during the informal investigation, VAMC Director, Stephen Kleinglass, concluded that an Administrative Investigative Board ("AIB") should be convened to formally investigate the claim. (Id. at 325-26).

Plaintiff was scheduled to appear before the AIB on August 9, 2002, but the appointment was cancelled. When Eugene House, VAMC's Environmental, Health & Safety Manager, telephoned Plaintiff at his home to tell him the appointment needed to be rescheduled, Plaintiff yelled: "How

dare you call me at home! You are on notice to never call me at home! Who do you think you are, calling me?" (Id. at 611-13; 1532).

On August 13, 2002, Kearse delivered two letters to Plaintiff, which instructed him to appear before the AIB on August 14, 2002, or face disciplinary or adverse action. Kearse described Plaintiff's reaction to the letters as "rude and disrespectful." Plaintiff approached Kearse and told him to tell Kleinglass and J.C. Hiller, the AIB technical adviser, that he would not attend the AIB meeting and that they should not send him any more messages. (Id. at 612-13; 1532).

On August 22, 2002, House issued Plaintiff a letter informing Plaintiff of a proposed three-day suspension for deliberate refusal to carry out a direct order, and for disrespectful conduct toward his supervisor. (Id. at 1532). The charge of disrespectful conduct arose from the events of August 9 and 13, when Plaintiff told House not to call him and told Kearse that he would not participate in the AIB proceedings. The charge of failing to follow an order arose from Plaintiff's failure to appear before the AIB on August 14, 2002. (Id.). Plaintiff later served the suspension on September 24-26, 2002. (Id. at 810; 964).

Also on August 22, 2002, Plaintiff filed a formal EEO Complaint of Employment Discrimination. (Id. at 88-93). He complained that he was subjected to harassment, discrimination, and reprisal for prior EEO activity when he received the letter of counseling on June 28, 2002, which advised him that allegations of sexual harassment had been filed against him and that he was forbidden to enter the radiology department. The ORM formally accepted the Complaint on September 26, 2002.

Plaintiff was absent from work on August 26-28, 2002. (Id. at 729; 1057). Prior to his absence, Kearse had denied his request for leave for those dates. On August 28, Plaintiff called and

requested sick leave, but later admitted he was not sick on those dates. (Id. at 1057).

On August 27, 2002, Hiller sent Plaintiff a "Notification of Interview" and a "Written Order" to Plaintiff by certified mail, which ordered Plaintiff to appear before the AIB on September 5, 2002. The letter stated that the AIB would propose Plaintiff's removal from employment if he did not comply with the order. (Id. at 1055; 1190-91). On August 29, Kearse hand delivered those documents to Plaintiff. (Id). Plaintiff did not appear at the meeting on September 5, 2002. (Id. at 1055-56).

On September 5, 2002, the AIB issued its findings concerning Schoonover's harassment allegations. The AIB concluded that Plaintiff sexually harassed Schoonover; that Plaintiff failed to follow supervisor instructions not to contact her; and that Plaintiff violated VAMC policy and supervisory orders when he failed to appear before the AIB. (Id. at 810-13). "Given the severity of" Plaintiff's behavior, "his failure to comprehend the nature of his actions and his failure to appear before the board," the AIB recommended that strong disciplinary action be taken against Plaintiff. (Id. at 812).

On September 19, 2002, Kearse instructed Plaintiff to report to the Environmental Care Office to see Manager House. Plaintiff refused. (Id. at 806).

On September 30, 2002, Plaintiff received a letter of "proposed removal." (Id. at 798-802). The letter charged that Plaintiff had committed five work-place infractions which justified his removal: 1) refusal to comply with an order to report to the AIB; 2) absence without leave; 3) rude and inappropriate behavior toward others; 4) failure to follow an instruction from supervisor; and 5) sexual harassment. The letter noted that VAMC director Kleinglass had not yet made the final decision on Plaintiff's termination, and advised Plaintiff of his rights to challenge the proposal. (Id.

at 802).

Plaintiff did not respond to the notice of proposed removal. On October 18, 2002, Kleinglass, having considered all the evidence, sustained all five grounds for removal and terminated Plaintiff's employment, effective November 1, 2002. (Id. at 795-96). On October 22, 2002, Plaintiff received the notice of removal, which advised him of the available administrative remedies and appeals processes available to him.

On December 11, 2002, the ORM consolidated Plaintiff's multiple EEO and administrative claims. (Id. at 26). On January 27, 2003, the EEO issued an Investigative Summary and Analysis Report, which summarized Plaintiff's claims that his June 2002 reassignment, the September 2002 suspension and the October removal constituted harassment. (Id. at 26-48). On April 10, 2003, the Department of Veterans Affairs issued a Final Agency Decision denying Plaintiff relief on all claims. (Id. at 1-18). Plaintiff timely appealed the decision to the Merit Systems Protection Board (MSPB). On August 22, 2003, an MSPB administrative law judge ruled that Plaintiff had been discharged for good cause and that there were no circumstances mitigating the removal from service. (Id. at 1054-1074).

On February 23, 2004, Plaintiff filed suit in this Court against the United States Department of Veterans Affairs, alleging that the VAMC reassigned, suspended and terminated him in retaliation for his prior EEO activity, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. Defendant moves for summary judgment, arguing that Plaintiff's claim should be dismissed because he fails to state a *prima facie* case of retaliation. In the alternative, Defendant argues the claims should be dismissed because Plaintiff fails to demonstrate that Defendant's non-retaliatory reasons for terminating him are pretextual.

## II.  LEGAL ANALYSIS

### A.     Summary Judgment Standard of Review

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986).  Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and  the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23.  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party.  Id. at 255.  Thus, summary judgment is appropriate when the court has viewed the facts and the inferences drawn from those facts, in a light most favorable to the non-moving party, and found no triable issue.  See Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995).

### B.     McDonnell-Douglas

A claim for retaliation is based upon an employer's actions taken to punish an employee who makes a claim of discrimination.  Haas v. Kelly Services, Inc., 409 F.3d 1030, 1036 (8th Cir. 2005). Title VII provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees...because [the employee] has opposed any practice made unlawful by this subchapter."  42 U.S.C. § 2000e-3a.

Title VII retaliation claims are analyzed under the three-part burden shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Erenberg v. Methodist Hosp., 357 F.3d 787, 793 (8th Cir. 2004); Griffith v. City of Des Moines, 387 F.3d 733 (8th Cir. 2004); Eliserio v. United Steel Workers of America Local 310, 398 F.3d 1071, 1078 (8th Cir. 2005). To establish a *prima facie* case of retaliation under Title VII, a plaintiff has the burden to show that: (1) he engaged in protected activity; (2) the employer took adverse employment action against him; and (3) that the adverse action was causally linked to the protected activity. See id.; Haas, 409 F.3d at 1036-37; Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1028 (8th Cir. 2004). An adverse employment action is exhibited by a material employment disadvantage, such as change in salary, benefits or responsibilities. See LaCroix v. Sears, Roebuck & Co., 240 F.3d 688, 691 (8th Cir. 2001). If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for its actions. See Henthorn, 359 F.3d at 1028. If the employer satisfies that requirement, the burden then shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. See id.

A plaintiff cannot necessarily avoid summary judgment by simply establishing a *prima facie* case and showing that the employer's purported justification is false. Summary judgment may still be warranted if the evidence reveals some other non-retaliatory reason for the employer's action, or the plaintiff creates only weak factual issues concerning pretext and additional, uncontroverted evidence shows that there was no retaliation. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). Plaintiff retains the ultimate burden of persuasion in showing retaliation throughout the analysis. Id. at 143.

Here, Defendant concedes that Plaintiff has demonstrated the first two elements of a *prima*

*facie* case of retaliation. Defendant concedes that Plaintiff has established that he engaged in protected activity because he had filed two complaints with the EEO. See Def. Mem. p. 13.[1] Defendant also concedes that Plaintiff's reassignment, suspension and removal constitute adverse employment actions under Title VII. See id. Defendant argues, however, that Plaintiff's claim fails because he has not demonstrated that his reassignment, suspension and termination were causally linked to his prior EEO activity. See id. In the alternative, Defendant argues that Plaintiff's claim fails because the VAMC offered legitimate, non-retaliatory reasons for his termination and Plaintiff has not established that those reasons are pretextual. See id. pp. 20-30.

Assuming without deciding that Plaintiff has established a *prima facie* case of retaliation, the Court concludes that Plaintiff's claim should be dismissed because Defendant has offered legitimate, non-retaliatory reasons to terminate Plaintiff's employment and Plaintiff has offered no evidence that those reasons are pretextual.

### 1. The VAMC Had Legitimate Reasons to Reassign, Suspend and Terminate Plaintiff's Employment

Defendant contends that it is entitled to summary judgment because the VAMC proffered legitimate, non-retaliatory reasons for Plaintiff's reassignment, suspension and termination. The VAMC maintains that it would have terminated Plaintiff regardless of his EEO activity due to his insubordination and harassing behavior. Insubordination and violation of company policy are legitimate reasons for termination. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999); Miner v. Bi-State Dev. Agency, 943 F.2d 912, 913-14 (8th Cir. 1991). The Court finds that the VAMC has proffered legitimate reasons for Plaintiff's reassignment, suspension and termination.

---

[1] Plaintiff filed an EEO complaint in February 2000, in connection to a charge of unexcused absence, and another complaint in 1996. See Def. Ex. 1 at 2.

### a. Plaintiff's Reassignment

On June 25, 2002, Kearse notified Plaintiff that he was being reassigned to a different department and that he was forbidden from entering the radiology department. On June 28, 2002, Kearse provided Plaintiff written notice of his reassignment. On June 21, 2005, Schoonover had reported Plaintiff's harassing behavior to Kearse. On that same day, Plaintiff asked to be transferred out of the radiology department. On June 25, Schoonover requested the VAMC to formally investigate Plaintifff's harassing behavior.

ORM Investigator Harness testified during the EEO investigation that Plaintiff was reassigned pursuant to VAMC policy, which requires the VAMC to separate victims of sexual harassment from the alleged harasser while the claim of harassment is being investigated. See Def. Ex. 1 at 324. Also, Hennepin County District Court had issued a Temporary Restraining Order on June 27, 2002, which prohibited Plaintiff from having any contact with Schoonover, who worked in the radiology department. The Court finds that the VAMC reassigned Plaintiff for legitimate, non-retaliatory reasons.

### b. Plaintiff's Suspension

On September 19, 2002, manager House suspended Plaintiff for refusal to obey a direct order, and for disrespectful conduct toward a supervisor. On August 13, 2002, Kearse had instructed Plaintiff by letter to appear before the AIB on August 14, 2002. Kearse described Plaintiff's reaction to the letter as "rude and disrespectful." He told Kearse that he would not attend the AIB meeting and that Kearse should not send him any more AIB notices. Plaintiff also acted disrespectfully to House when House called him on August 9 to report that the AIB meeting had been rescheduled. Plaintiff screamed at House and told him to never call him again.

The VAMC had legitimate reason to suspend Plaintiff for his disrespectful conduct and his refusal to attend the AIB meeting. The VAMC requires all employees to participate in the AIB process, and Plaintiff was notified that if he failed to participate he would be removed from employment. Plaintiff admits he was required to participate in the AIB proceedings. See Eley Depo. at 88-89. Plaintiff's refusal to participate in the process violated VAMC policy, and the VAMC had legitimate reason to suspend Plaintiff for his insubordination. See Kiel, 169 F.3d at 1135.

### c. Plaintiff's Termination

On September 30, 2002, Plaintiff received a notice of proposed removal from employment. In the notice, the VAMC set forth five infractions of work-place rules that justified his termination: 1) refusal to comply with an order to report to the AIB; 2) absence without leave; 3) rude and inappropriate behavior toward supervisors; 4) failure to follow supervisory instruction; and 5) sexual harassment. Despite an opportunity to respond to the charges, Plaintiff did not reply to the notice of proposed removal. On October 18, 2002, after considering all the evidence, VAMC Director Kleinglass sustained all five grounds for removal and terminated Plaintiff.

As discussed above, the VAMC had legitimate reason to terminate Plaintiff for his refusal to participate in the AIB process. After his notice of suspension in August 2002, Plaintiff refused a subsequent order to attend a rescheduled AIB meeting on September 5.

The record also shows that the VAMC had legitimate reason to terminate Plaintiff for the other reasons listed in the notice of removal. Plaintiff was absent from work on August 26 and 27, 2002, even though his request for leave on those days had been denied. Therefore his absence without leave was properly considered as grounds for termination.

The VAMC had documented Plaintiff's disrespectful conduct toward supervisors Kearse,

Anklam and House on three different occasions, and also that Plaintiff disobeyed Kearse's instruction to report to House's office on September 19.  Thus, the VAMC had legitimate reason to terminate Plaintiff for disrespectful conduct and insubordination.

Lastly, the Court finds that the VAMC had legitimate reason to terminate Plaintiff for sexual harassment.  The AIB found that Plaintiff sexually harassed Schoonover and that he continually ignored his supervisors' instructions not to contact her.  The AIB recommended, "given the severity" of Plaintiff's behavior, that strong disciplinary action be taken against him.  The VAMC progressive discipline policy provides for a range of penalties from reprimand to removal for sexual harassment.  As such, Plaintiff's harassing conduct constitutes non-retaliatory grounds for his termination.

The Court finds that the VAMC has demonstrated five legitimate, non-retaliatory reasons for the adverse employment actions taken against Plaintiff.  Thus, to withstand a motion for summary judgment, Plaintiff bears the burden to prove by a preponderance of the evidence that the legitimate reasons offered were not the VAMC's true reasons, but were a pretext for retaliation.  See Hitt v. Harsco Corp., 356 F.3d 920, 924 (8th Cir. 2004).

## 2. Plaintiff Offers No Evidence that The VAMC's Stated Reasons for His Removal Are Pretextual

To survive summary judgment, Plaintiff must demonstrate that there are genuine issues of material fact whether the VAMC's stated reasons are a pretext for retaliation.  In his opposition to Defendant's Motion for Summary Judgment, Plaintiff argues that the VAMC's stated reasons for termination are false.  See Pl. Mem. in Opp., p. 1.  He argues that his supervisors conspired against him and forced Schoonover into making false accusations.  See id., p. 2; 4.

Plaintiff's arguments are unavailing and fail to raise an issue of fact whether VAMC acted for retaliatory reasons.  The facts show that VAMC conducted a thorough investigation of

Schoonover's harassment claim. The AIB, comprised of three impartial members and a technical adviser, sat as a fact finding board and heard sworn testimony and received evidence. After reviewing all the evidence, the AIB made a formal finding that Plaintiff had harassed Schoonover. Plaintiff, beyond mere allegations that the AIB was unfair and partial, offered no evidence that the AIB discriminated against him or that the AIB investigation and findings were a pretext for retaliation. Moreover, the question whether VAMC correctly concluded that Plaintiff had exhibited harassing conduct is immaterial, because VAMC acted reasonably and in good faith on the AIB's investigation and recommendation. See Euerle-Wehle v. United Parcel Service, 181 F.3d 898, 900 (8th Cir. 1999); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) (a court need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed the asserted reason). Plaintiff has not demonstrated an issue of fact whether the VAMC improperly terminated Plaintiff because of his harassing conduct as a pretext for retaliation.

Nor has Plaintiff provided evidence that VAMC's four other proffered reasons for termination were pretextual or designed to disguise an illegal retaliatory motive. The VAMC has offered clear-cut, legitimate, non-retaliatory reasons for terminating Plaintiff, including that he refused to obey a direct order to attend the AIB meeting after being warned that such refusal would result in his discharge. Plaintiff has offered no evidence that the order he refused was given for any reason other than VAMC's legitimate interest in resolving internal complaints through use of the AIB. Neither has Plaintiff presented evidence that the VAMC treated other employees differently. See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972-73 (9th Cir. 1994) (a common way of proving pretext is to show that similarly situated employees were more favorably treated). In short, Plaintiff

has offered no evidence that the VAMC's stated reasons for his termination were pretextual, and his claim should be dismissed.  See Putnam v. Unity Health System, 348 F.3d 732, 737 (8th Cir. 2003) (dismissing claim Title VII retaliation claim because Plaintiff failed to show pretext) (citing Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1028 (8th Cir. 2002).

In sum, even if the Court were to decide that Plaintiff has established a *prima facie* case of retaliation, his claim nonetheless fails as a matter of law.  The VAMC has offered legitimate, non-retaliatory reasons for his termination, and Plaintiff has failed to establish that those stated reasons are pretext for a retaliatory motive.  Plaintiff's retaliation claim should be dismissed.

### III.  RECOMMENDATION

Based on the files, records and proceedings herein, it is **HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment [#25] be **GRANTED.**


DATED: October 12, 2005              s/ *Franklin L. Noel*
                                     FRANKLIN L. NOEL
                                     United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 31, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party s brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 31, 2005** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.